CLINTON L. CALDWELL, *as Assignee etc.*, v. ANGELL MATTHEWSON *et al.*

No. 10591.

1. ASSIGNMENT —*district court has power to remove derelict assignee.* An assignee of the estate of an insolvent debtor for the benefit of creditors is a trustee of an express trust; and the District Court of the county in which the assignment is recorded has the power to remove him for a violation of the trust and to appoint a successor.

2. ———— *petition to remove assignee; security for costs not required.* A petition to the court having jurisdiction of the assignment, filed by the assignors and divers creditors of the estate, alleging mismanagement and misconduct on the part of the assignee and asking his removal, may be filed and considered as a step in the assignment proceedings; and the jurisdiction of the court does not depend on the giving of security for costs by the petitioners, nor is it reversible error to refuse to require such security to be given.

3. ———— *assignee wasting estate should be removed.* Where the assignee wastes the estate by improvident management, the employment of unnecessary help and other excessive disbursements, to such an extent as to materially impair it, he should be removed from his trust.

*Error from Labette District Court.*

*Hon. A. H. Skidmore, Judge.*

AFFIRMED.                    OPINION FILED JULY 11; 1896.

ON June 15, 1893, Angell Matthewson and F. H. Snyder, who were engaged in the business of banking and dealing in loans on real estate, as partners, made an assignment of their partnership and individual properties to Clinton L. Caldwell for the benefit of their creditors. Caldwell was afterward elected assignee by the creditors, and duly qualified and undertook the execution of the trust. The assigned estate included a large number of pieces of real estate, most of which were incumbered, some of them to the full amount of their value. There were also a large number of bills receivable, some water-works bonds, hotel stock, and other items of property. January 22, 1895, the bondsmen of the assignee presented a petition to the District Court asking to be relieved from their liability on the bond. February 13, 1895, certain creditors presented to the Court a petition asking for the removal of the assignee. February 16 certain other creditors filed a petition asking the removal of the assignee ; and on the same day the assignors also filed petitions for the removal of the assignee, setting out their grounds therefor at length. Other petitions for his removal were filed by the Matthewson and Snyder Investment Company, Cornelia W. Matthewson, wife of one of the assignors, and Mary M. Snyder, wife of the other assignor. Various motions with reference to these petitions were made by the assignee, and numerous answers to them were filed. July 3, 1895, an order was made, consolidating all the petitions in the case, granting the petitioners leave to file an amended petition

within 15 days, and referring the whole matter to George S. King, who was agreed upon as referee by the parties. October 15, 1895, an amended petition, containing various charges against the assignee, was filed on behalf of all the complainants. To this petition a motion was filed asking that it be made more definite and certain in many particulars. This motion was overruled. A demurrer to the amended petition was then filed, which was also overruled. The assignee also moved to require the petitioners to give security for costs. This motion was overruled. A very long answer was then filed denying the various charges contained in the petition, and setting up many matters, not necessary to state, to which the petitioners replied. November 18, 1895, the trial was commenced before the referee. January 27, 1896, the referee reported the evidence and his conclusions of fact, both of which are very voluminous, the findings of the referee alone covering 30 pages of the record. On the filing of this report the petitioners asked an order removing the assignee, and the assignee moved to set aside the report. Thereupon the Court, after having reviewed the evidence as returned, as well as considered the findings of the referee, made an order for the removal of the assignee. The assignee alleges error in the proceedings, and brings the case here for review.

*T. N. Sedgwick*, and *W. B. Glasse*, for plaintiff in error.

*Kimball & Osgood*, for defendants in error.

ALLEN, J.  Before undertaking to pass upon the specifications of error in this case, it is necessary to consider the nature and extent of the jurisdiction of

the District Court, where the assignment

1. District court has power to remove derelict assignee. is filed, over the assignee and the assigned estate. The grounds on which the removal of the assignee was ordered are not such as are specifically mentioned in the statute relating to assignments. Section 30, of the Act to Regulate Voluntary Assignments for the Benefit of Creditors, authorizes the Court to dismiss the assignee for failure to file an inventory or to give bond, and section 31 provides for like proceedings in case any security on the bond of the assignee becomes insolvent or removes from the State. Section 35 authorizes the removal of the assignee for failure to pay dividends. Section 36 requires the assignee to exhibit, to any person entitled to a demand allowed against the estate, the condition of the assets; and section 37 reads as follows:

"Upon petition in behalf of any such person, to the district court in whose clerk's office the inventory is filed, showing good cause therefor, verified by affidavit, such court shall cause any assignee to be cited to appear before it at such time as may be designated, to answer the allegations in such petition, and to do and abide such order as shall be made by such court in the premises; and upon the hearing, such court shall make such order as to it shall seem fit and lawful in the premises for enforcing the provisions of this chapter."

Section 12 of chapter 114, General Statutes of 1889, ¶ 7170, Concerning Trusts and Powers, reads as follows:

"Trustees having violated or attempted to violate any express trust, or becoming insolvent, or of whose solvency or that of their sureties there is reasonable doubt, or for other cause, in the discretion of a court having jurisdiction, may, on petition of any person interested, after hearing, be removed by such

court; and all vacancies in express trusteeships may be filled by such court.''

That an assignee for the benefit of creditors is a trustee of the assigned estate is obvious. That courts of equity have general supervision and control over all matters of trust and confidence is settled law; and it also seems to be settled that, unless in conflict with some express statutory provision, courts of equity have general supervision over and power to remove assignees for misconduct and violation of their duties. Burrill, Assignments, § 419 ; *McIlhenny Co. v. Todd*, 71 Tex. 400 ; *Cohen & Co. et al., v. Morris & Co. et al.*, 70 Ga. 313 ; *Golden's Appeal*, 110 Pa. St. 581.

An assignee-for the benefit of creditors is the trustee of an express trust. "Express trusts are those which are created by the direct and positive acts of the parties by some writing, or deed, or will." 2 Story's Eq. Juris. [13 ed.] 283. Implied trusts are those which are de-ducible from the transactions of the parties where there is no express purpose to create a trust. 27 Am. & Eng. Encyc. Law, 6. That the duties of the as-signee in disposing of the trust estate are regulated by law, rather than by express terms of the deed of assignment, does not render the trust any the less an express one. It is as though the assignors had incor-porated the act into the deed of assignment, for the estate is transferred as a trust for the benefit of cred-itors, to be administered and distributed among them as the law directs. While the statute regulates the management of the trust, it is created by the deed of assignment. Nor does the fact that the permanent assignee is selected by the creditors, who are the ben-eficiaries of the trust, render it any the less an express trust. It is in effect like any other substitution of a

*2. Assignee removed on petition.*

trustee.   The nature of a trust does not depend in any degree on the particular individual who is to administer it.

The acts Regulating Assignments for the Benefit of Creditors and Concerning Trusts and Powers were both parts of the General Statutes of 1868, and have remained in force ever since, except the provisions relating to the election of an assignee.   We think the two acts may well be construed together, and that section 12 of the Act Concerning Trusts and Powers gives ample authority for the removal of an assignee for any violation of his trust.   To hold that an assignee could only be removed for the causes expressly named in the Assignment Act, would require us to engraft on section 12 of the Act Relating to Trusts and Powers an exception which it seems to us clear, the Legislature never intended.   Section 12 is broad and general in its provisions, reaching all cases of express trusts.   Assignments for the benefit of creditors are but one of many kinds of express trusts.

Much space in the brief and much time on the oral argument were devoted to the sufficiency of the proof to warrant a removal.   It would serve no purpose to recite at length in this opinion the findings of the referee or the trial court.   The substantial basis on which the order of removal rests is, that 3. Removed for cause. the assignee had been extravagant, and needlessly wasted the estate ; that he had paid out more money for expenses than was necessary, thereby depriving the creditors of dividends they ought to have received.   This finding of the Court is abundantly sustained by the assignee's report.   The expenditure of more than $14,000 in the collection of less than $30,000 seems on its face altogether unreasonable, and this sum was likely to be

increased by unpaid bills yet to be presented. There does not appear to have been any necessity for the employment of any such number of persons as the assignee kept on his pay-roll to assist him. While there would necessarily be somewhat heavy expenses connected with the management and disposition of so many pieces of encumbered real estate, there were many bills receivable, such as installment notes for loans negotiated, tax-sale certificates, and other items, which would not necessarily require any considerable labor or expense; and, in fact, many of the install-ment notes were collected by the Matthewson-Snyder Investment Company and turned over at intervals to the assignee. It is not necessary to pursue the evi-dence in detail. We know of no better ground for re-moving an assignee, or one calling for more prompt and decided action, than that of needlessly wasting the estate. His motive in doing so is not of first impor-tance. The principal thing sought to be accomplished by the assignment is the application of the estate to the payment of the assignor's debts. If it is to be dissipated in expenses there is little use in having an assignee.

Much is said in argument about the hostility be-tween Matthewson and the assignee, and the cause of it. The fact of the existence of this feeling having been mentioned by the Court is taken as a basis for arguing that the only real ground existing for the re-moval of the assignee was this condition of hostility. It is further argued that this was caused entirely by the prosecution of a suit by the assignee against Mat-thewson's wife to recover certain bills receivable, which she claimed the right to hold as security for money due her. It is urged that, in this matter, the assignee was serving the creditors faithfully; that

Matthewson was incensed because he brought the
suit, and that this furnished the only motive for the
attack on him.   So far as appears from the record,
the course of the assignee in this matter was entirely
proper, but there seems to have been other matters
tending to create ill-will between the assignor and
assignee.   It is evident from the remarks of the Judge,
incorporated in the record, that the removal was
based on the management and disposition of the
estate by the assignee.

It is strenuously insisted that, even conceding that
the Court had power to remove the assignee, the proper
practice was not pursued in this case, and that there
are substantial errors in the proceedings requiring a
reversal of the order of removal.   It is insisted that
an action must be brought in the regular manner, by
petition setting forth specifically the grounds for re-
moval; that security for costs should be given as at
the commencement of a civil action; and that a sum-
mons should be issued and served in the usual way.
There would be much force in this contention were it
not for the fact that there is but one court having gen-
eral jurisdiction over the assigned estate, and that is
the District Court of the county in which the deed of as-
signment is recorded.   Section 12 of the Act Concerning
Trusts and Powers does not require that the proceeding
to remove shall be by civil action, but provides that it
shall be in the court having jurisdiction, after hearing,
on petition of any person interested.   The essentials of
the procedure are, that a petition shall be presented to
the proper court by some person interested in the estate
stating the ground for, and asking the removal of the
assignee;  that he shall be given reasonable notice, and
shall have a fair opportunity to defend against the
charges.   The precise form of the petition is not of great

importance in matters of this kind. *National Bank v. Branch,* ante, page 27. In this case there certainly was no want of notice. There were multifarious petitions and amended petitions affording the defendant ample notice of what was alleged against him ; and the trial was finally had on a consolidation of all the charges incorporated into one petition. Nor do we think the jurisdiction depended on the filing of a cost bond. Whether the Court, in its discretion, might have required the petitioners to furnish security for costs, we are not called upon to decide. But the District Court of Labette County had jurisdiction of this estate long before any of these petitions for removal were filed. Of that jurisdiction none of the parties had power to deprive it. It alone had authority to pass on the conduct of the assignee and to order his removal for sufficient cause. Its power to act did not depend on filing a cost bond, or a petition technically complying with the rules concerning pleadings in civil actions.

The order of removal is affirmed.

All the Justices concurring.