Lucille C. KING et al., Appellants,

v.

BOARD OF TRUSTEES, MONAHANS–WICKETT–PYOTE INDEPENDENT SCHOOL DISTRICT, Appellee.

No. 6593.

Court of Civil Appeals of Texas, El Paso.

Sept. 14, 1977.

Rehearing Denied Oct. 5, 1977.

Warren Burnett, Associated, Richard J. Clarkson, Odessa, for appellants.

Kerr, Fitz-Gerald & Kerr, Ted M. Kerr, Midland, for appellee.

## OPINION

WARD, Justice.

Three school teachers, each under the age of 65 and each employed as non-tenured teachers, sued their School District because their annual employment contracts were not renewed. They sought damages and declaratory judgment on their allegations that the School District's action was contrary to the provisions of Article 6252–14, Tex.Rev.Civ.Stat.Ann., which provided for their right to work until age 65, and contrary to the equal protection clauses of the State Constitution. The School District defended on the basis that it had adopted a uniform retirement policy which set a compulsory retirement age at less then 65 years and was authorized in its actions under Section 13.903 of the Texas Education Code. Trial was to the Court sitting without a jury and judgment was entered denying the school teachers any relief. We affirm.

The Monahans-Wickett-Pyote Independent School District had never adopted the optional continuing contract or tenure system for its teachers as provided by Section 13.101, et seq., Tex.Educ.Code Ann., but continued to employ its teachers by annual term contracts. On February 13, 1973, the Board of Trustees of the School District at a regular meeting of the Board duly adopted the retirement policy which became the subject of this controversy. The policy, according to the minutes of the meeting, is to the following effect:

"Retirement Age for all school employees of the Monahans-Wickett-Pyote Independent School District will be that employees are to retire at the end of the school term during which they reach or pass the age 64 for the 1972–73 term, 63 for the 1973–74 term, and 62 for the 1974–75 school term. August 1 of each year shall be the cut off date in determining the beginning and closing of a school term for retirement age."

The retirement policy was adopted under the provisions of Section 13.903 of the Education Code which had been passed in 1969. That Section is to the following effect:

"The board of trustees of each public school district in Texas shall have full authority to establish a uniform retirement age for its professional and supportive personnel and notwithstanding any provision to the contrary. No district shall be required to retain any person in its employment after he reaches such prescribed age."

The Defendant also relies upon Sections 23.26(b) and (d), Tex.Educ.Code Ann., which provide that the trustees shall have the exclusive power to manage and govern the public free schools of the district and that they may adopt such rules, regulations and by-laws as they may deem proper.

Various factors were considered by the Board of Trustees in their discussions leading to the adoption of the retirement policy. Increasing sick leave was found in teachers over the age of 62 with a consequent disruption of classroom progress even though

substitute teachers might be used. There was a decline in enrollment which necessitated the reduction of the number of staff, and this was a way to alleviate the situation. There was a problem present with continuing education among teachers as many things in education were changing and it was found that older teachers resisted these changes. Age 62 as a basis for retirement was taken from Social Security, and it was also considered that a teacher could be retired after the age of 60 without any penalty under the teachers' retirement system.

Prior to the Superintendent's recommendation to reemploy or not to reemploy any teacher, it was the policy of the District to have an evaluation of the teacher's performance at least once annually. Certain remedial actions were sometimes suggested and sometimes termination was recommended on the basis of the evaluation. In regard to the Plaintiffs, there was no evidence of any evaluation made of them prior to the year that they were retired.

Each of the Plaintiffs knew of the policy in the Spring of 1973 and before they signed their contracts for the 1973–74 school year. These contracts were for one year and they provided that the teachers would be governed by the school laws of Texas and "such policies and regulations as may be determined by" the District. Each of the Plaintiffs had taught in the School District for more than 28 years and were competent teachers. They had never had any problems with their contract renewal before August of 1974. The Plaintiffs and representatives of the Texas State Teachers Association appeared before the School Board at a regular meeting on August 13, 1974; they protested the policy, requested new contracts, but they were afforded no relief. Each of the teachers had applied in May of 1974 for the statutory teachers' retirement benefits and since June of 1974 each had received her respective retirement benefits in an amount set out in a stipulation of the parties made at the trial.

■ The issue in this case concerns Section 13.903 of the Education Code and whether or not it authorizes the retirement policy adopted by the School District. The Plaintiffs' primary point is that Section 13.903 and the retirement policy are in fatal conflict with Article 6252–14, Tex.Rev.Civ. Stat.Ann. That Statute was adopted in 1963 and it provides as follows:

"Section 1. It is hereby declared to be the policy of the State of Texas that no person shall be denied the right to work, to earn a living, and to support himself and his family solely because of age.

"Sec. 2. No agency, board, commission, department, or institution of the government of the State of Texas, nor any political subdivision of the State of Texas, shall establish a maximum age under sixty-five (65) years nor a minimum age over twenty-one (21) years for employment, nor shall any person who is a citizen of this State be denied employment by any such agency, board, commission, department or institution or any political subdivision of the State of Texas solely because of age * * *."

The Statute then specifically provides that the imposition of maximum age shall not apply to law enforcement peace officers, firefighters, or to institutions of higher education with established retirement programs.

The parties agree that school districts are creatures of the Legislature with only those powers and responsibilities which have been granted to them by that body. The legislative control is absolute and any degree of autonomy or local control is by grace of legislative direction and policy. The determination of employment practices of school districts is one area which has traditionally been left to local control. This has been modified in certain areas such as where the Legislature has established minimum qualifications for school teachers. See for instance cf. 13.034, Tex.Educ.Code Ann. Again, the Legislature has made provision for the optional adoption of the continuing contract or tenure system for teachers. Section 13.101 et seq., Tex.Educ.Code Ann.

Article 6252–14 expressed the public policy of the State when it became effective in

1963, although it expressly exempted the three groups mentioned from its coverage. The position of the Defendant is that another exemption was created when Section 13.903 was adopted in 1969. We agree as the intent of the Legislature seems clear from the face of the Statute where it gives the Board of Trustees full authority to establish a uniform retirement age "notwithstanding any provision to the contrary." This is emphasized by the concluding sentence of the Statute that states that:

" * * * No district shall be required to retain any person in its employment after he reaches such prescribed age."

The plain meaning of the words should control. Section 2.01, Code Construction Act; *State Board of Insurance v. Betts*, 158 Tex. 612, 315 S.W.2d 279 at 281 (1958).

Although we feel the plain meaning settled the matter, the School District does point out an additional reason for our holding. Article 6252–14 is a general Statute applicable to many State agencies, while Section 13.903 is a special Statute applicable only to retirement in school districts. If the two Statutes conflict, then Section 3.06 of the Code Construction Act would govern the decision. It provides that if a general provision conflicts with a special or local provision, they shall be construed if possible so that effect is given to both; and if the conflict is irreconcilable, the special Statute prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail. See 53 Tex.Jur.2d Statutes, Sec. 110 (1964). Here, the last Statute is the special one and prevails as an exception to the general provision and both continue to stand. Regardless of the approach taken, the end is the same. We hold that the mandatory retirement policy adopted by the Defendant/School District is valid and enforceable under the laws of this State.

■ Somewhat incidental to the above, the Plaintiffs attack the constitutionality of Article 13.903 claiming that there was nothing in the caption of the Act when it was originally passed as Article 2922–1j in 1969

that suggested that it was limiting or creating an exception to Article 6252–14, and hence the Act was in violation of Article 3, Sec. 35, of the Texas Constitution. Regardless of any merit in this criticism as to the original caption, the same has been put to rest when the predecessor Statute to Section 13.903 was codified and reenacted as a part of the Education Code in 1971. See Tex.Const. art. 3, Sec. 43. The point is overruled.

■ Finally, the Plaintiffs say that both Section 13.903 and the school's retirement policy are unconstitutional under Article 1, Sec. 3, of the Texas Constitution as these elderly Plaintiffs have become subjects of discriminatory legislation. They urge that any classification based solely on age is inherently suspect and requires a strict review of the classification by the Courts, and that, as a consequence, justification for such a classification is permitted only if the School Board is able to show a compelling interest justifying the classification. *Cf. Mercer v. Board of Trustees, North Forest Independent School District*, 538 S.W.2d 201 at 204 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n. r. e.). The Plaintiffs further argue that if the age be a suspect classification, then the School District has failed in its burden of showing the compelling interest justifying the classification. In other words, the Plaintiffs urge that we proceed to test this legislation as legislation is presently tested by the United States Supreme Court when it applies the equal protection clause.

While we are cited to no Texas authority directly in point, we have been referred to *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). There, the United States Supreme Court tested a Massachusetts statute providing for mandatory retirement of uniformed police officers at age 50. It held that the statute did not deny equal protection in violation of the Fourteenth Amendment of the United States Constitution. It further held that the strict scrutiny approach of the legislative classification was not required since the legislative classifica-

tion interfered with neither fundamental rights nor did it create a "suspect classification." The Court pointed out that it had consistently applied a standard less than that of strict scrutiny to state legislation restricting the availability of employment opportunities. Further, it held that the classification of uniformed state police officers over 50 did not constitute a suspect class for purposes of equal protection analysis, and that a classification of the aged only required an approach under the rational-basis standard.

We adopt that treatment in this test under the State Constitution and afford the age classification the test under the rational-basis standard. That being the case, the statutory direction and the School Board's plan are not to be set aside since there are facts and reasons present which reasonably justify their respective adoptions. *Texas Woman's University v. Chayklintaste*, 530 S.W.2d 927 (Tex.1975).

We have considered all of the Appellants' points and they are overruled. The judgment of the trial Court is affirmed.